THE HONORABLE JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| RICHARD HOFFMAN and ROMY HOFFMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOMETAP INVESTMENT PARTNERS III SPV, LLC; HOMETAP EQUITY PARTNERS, LLC; and DOES 1–10,<br><br>Defendants. | No. 2:26-cv-01124<br><br>REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION<br><br>ORAL ARGUMENT REQUESTED |

Defendants Hometap Investment Partners III SPV, LLC and Hometap Equity Partners, LLC (collectively, "Hometap") submit this reply in support of their motion to compel arbitration.

**INTRODUCTION**

When the Hoffmans entered into the Option Purchase Agreement at the center of this dispute, they agreed to arbitrate "any and all disputes or claims" arising out of the Agreement. Decl. Ex. A, Dkt. No. 14-1, at 24, § 8.13(a).[1] They further agreed to submit to the "AAA rules" in arbitration and that any "issues relating to the scope, enforceability, and arbitrability" of the arbitration agreement "are for the arbitrator to decide." *Id.* at 25, § 8.13(e). In this Court, they have done an about-face, resisting Hometap's efforts to compel arbitration on the grounds that the

[1] Citations to public record pages are to the page numbers that appear in the header generated by the court's ECF system.



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

arbitration agreement is unenforceable under the Truth in Lending Act and procedurally unconscionable. But the Hoffmans' attacks on the enforceability of the arbitration agreement fall squarely within the delegation provisions—and thus are for the arbitrator to decide, not this Court. And, in any event, those arguments are wrong.

The Hoffmans primarily argue that TILA bars enforcement of the delegation provisions. Specifically, 15 U.S.C. § 1639c(e)(1) provides that "[n]o residential mortgage loan … may include terms which require arbitration … as the method for resolving any controversy or settling any claims arising out of the transaction." The Hoffmans contend that because they *allege* the Agreement is a residential mortgage loan, this Court must answer that question before enforcing the delegation provisions too. But that circular argument would nullify a delegation clause any time a plaintiff raises the mere prospect of TILA's application. That is not a sensible reading of TILA. TILA prohibits arbitrating the merits of a dispute—"resolving any controversy or settling any claims"—arising out of a residential mortgage loan. It does not prohibit arbitrating the question whether the transaction at issue is a residential mortgage loan in the first place.

The Hoffmans' unconscionability challenge to the delegation provisions fares no better. It is true that, if the Court determined that the delegation provisions themselves were unconscionable, they would be unenforceable. But they plainly are not. The Hoffmans were presented with the clear delegation provisions and had ample opportunity to understand them, and the Hoffmans provide no support for their assertion that they could not negotiate those terms.

Even if the Court reaches the enforceability of the parties' arbitration agreement, it should conclude that it is enforceable—and should enforce it. The Option Purchase Agreement is an option contract and an investment plan, not a residential mortgage loan under TILA. Hometap did not lend money with the obligation that the Hoffmans repay at least the same amount; instead, Hometap purchased an option that may eventually yield more, less, or nothing. The Hoffmans have also failed to advance any meaningful argument that the clear and conspicuous arbitration agreement is somehow unconscionable. The Hoffmans' claims must therefore be arbitrated.



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

## ARGUMENT

### I. The enforceability of the parties' arbitration agreement under TILA is for the arbitrator to decide.

The parties agreed in unambiguous terms to delegate to the arbitrator any issues concerning the enforceability of their principal arbitration agreement. The Court should not countenance the Hoffmans' attempt to circumvent that delegation agreement.

#### A. Arbitrability under TILA is a threshold question for the arbitrator.

Arbitration cases can involve "three layers" of disputes: (1) merits, (2) arbitrability, and (3) who decides arbitrability. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148-49 (2024). The first layer concerns liability; the second whether liability must be arbitrated; and the third who decides whether liability must be arbitrated. *See id.* The issue in dispute here—whether the Option Purchase Agreement is a "residential mortgage loan" under TILA—affects only the second-order question of arbitrability. If TILA applies, the parties' agreement to arbitrate the merits of the underlying claims is not enforceable. In the delegation provisions, the parties have agreed (on the third question) to let an arbitrator decide that question. *See* Decl. Ex. A at 25, § 8.13(e). TILA does not prevent the Court from enforcing that delegation agreement.

The Hoffmans' contrary argument is untenably circular. They argue that an arbitrator cannot decide the second-order arbitrability question because that question must be resolved against arbitration. In effect, they argue that the purported answer to the dispute about arbitrability controls who decides arbitrability. That argument turns arbitration first principles—and the clear delegation provisions the Hoffmans agreed to—upside down.

Courts should not preclude an arbitrator from deciding arbitrability on the (mistaken) ground that a dispute is not arbitrable. That result would defeat the purpose of a delegation clause. Courts in this District have thus correctly held that TILA does not dictate "who is empowered to decide arbitrability in the first instance." *Veneziani v. Unison Agreement Corp.*, No. 22-cv-1789, 2023 WL 4201961, at *2 (W.D. Wash. June 27, 2023); *Olsen v. Unison Agreement Corp.*, No. 22-



McGuireWoods LLP
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

cv-1859, 2023 WL 4492346, at *2 (W.D. Wash. June 27, 2023). Because TILA is silent on who decides arbitrability, the Agreement's delegation provisions control.

Ninth Circuit authority confirms this point. In *Caremark, LLC v. Chickasaw Nation*, the Ninth Circuit held that whether the Recovery Act precluded arbitration was "exactly the type of threshold arbitrability issue that the parties have delegated to the arbitrator." 43 F.4th 1021, 1034 (9th Cir. 2022). The Ninth Circuit explained that a delegation clause can "prevent a court from determining whether a statute precludes arbitration," so long as a statutory argument "does not call into question the district court's authority to enforce the *delegation clause*." *Id.* at 1033-34. As in *Caremark*, the Hoffmans' TILA argument bears only on the validity of the agreement to arbitrate the merits, not the delegation provisions. *See id.* at 1034. Because the Hoffmans' arbitrability challenge "applies only to the underlying arbitration agreement," it "does not invalidate antecedent agreements to arbitrate arbitrability." Opp., Dkt. No. 20, at 19 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 72 (2019)).

Ignoring *Caremark*, the Hoffmans rely instead on *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024), arguing that their "challenge to Hometap's arbitration clause is similar in that they point to a separate federal law that prohibits arbitration clauses in mortgages." Opp. 19. That reliance is misplaced. *Fli-Lo Falcon* involved not a statutory bar on arbitration, but an exemption to the Federal Arbitration Act itself. *See* 97 F.4th at 1194-98; 9 U.S.C. § 1. Whether the FAA applies at all is of course a prerequisite to enforcing a delegation clause *under the FAA*. *See Fli-Lo Falcon*, 97 F.4th at 1194-98; *Caremark*, 43 F.4th at 1033-34 ("[I]f a contract falls within an FAA-exempt category, the district court has no power at all to compel arbitration."); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019) (emphasizing the FAA's "sequencing" as supporting the rule that "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration").

TILA is different. TILA does not require courts to determine threshold arbitrability issues. It only undermines the enforceability of an agreement to arbitrate the merits. In arguing otherwise, the Hoffmans warp TILA's text. They assert that the threshold dispute over arbitrability is itself a



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

"controversy" that cannot be arbitrated. Opp. 17. But in a legal context, a "controversy" refers to "a civil action or suit." Controversy, BLACK'S LAW DICTIONARY (4th ed. 1968). By including that word, TILA covers both civil actions and individual "claims"—i.e., liability disputes. 15 U.S.C. § 1639c(e)(1) (prohibiting arbitration for "resolving any controversy or settling any claims"). It bars arbitration of *merits* disputes once a transaction is determined to be a "residential mortgage loan." Nothing in TILA suggests that the term "controversy" includes a dispute about arbitrability rather than the underlying merits dispute.

TILA's arbitration bar is a "clear Congressional command" that agreements for residential mortgage loans may not require arbitration of the merits. Opp. 20. But TILA does not command that courts make the threshold determination of whether a transaction is a residential mortgage loan. Because the parties "form[ed] an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision"—including the argument that TILA applies—"are for the arbitrator to decide in the first instance." *Caremark*, 43 F.4th at 1030.

**B. The delegation provisions are not unconscionable.**

The Hoffmans also argue that the delegation provisions are procedurally unconscionable. Unlike the TILA question, Hometap agrees that the Court must decide an unconscionability challenge specific to the delegation provisions before enforcing them. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Fli-Lo Falcon*, 97 F.4th at 1199-1200. But there is nothing unconscionable about the parties' routine delegation provisions.

The Hoffmans label the Option Purchase Agreement an adhesion contract but provide no basis for concluding that they could not negotiate its terms or exert equal bargaining power. *See Adler v. Fred Lind Manor*, 103 P.3d 773, 783 (Wash. 2004) (en banc). They do not show that their "only choice … was to agree to the delegation clause." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021). In fact, their assertions reflect the opposite. The Hoffmans pursued a contract with Hometap after "researching their options to access their home equity." Opp. 10. And they refer to cases involving "similar transaction[s]" with other companies. *Id.* at 25. Consumers



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

who can compare and select among alternative providers in a competitive marketplace possess bargaining power. *See Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 495 (Wash. 2020) (en banc) ("The key inquiry is whether the party lacked meaningful choice."); *see also Dean Witter Reynolds, Inc. v. Superior Ct.*, 211 Cal. App. 3d 758, 768 (1989) ("The meaningfulness of a party's choice is based not only on his relationship to the other party but also on his ability to obtain the goods or services which are the subject of the parties' contract from others.").

Nor were the delegation provisions hidden. They appeared in the Agreement in a section instructing the Hoffmans, in capitalized letters, to "READ THIS SECTION CAREFULLY." Decl. Ex. A at 24, § 8.13. And the delegation provisions are appropriately located in the "Arbitration Procedures" subsection, not (as the Hoffmans wrongly assert) "buried in a maze of fine print." Opp. 32 (internal quotation marks omitted).

The Agreement also advised the Hoffmans, in capitalized letters on the page before the signature page, to discuss the Agreement with "tax, legal, and financial advisors and with family members." Decl. Ex. A at 28, § 8.22 (emphasis removed). In the same paragraph, the Hoffmans affirmed that they had "had the opportunity to do so." *Id.* (emphasis removed). The "Investment Disclosures" document contains a similar acknowledgement. *See* Pls.' Ex. A, Dkt. No. 22-1, at 4. The Hoffmans offer no basis to disregard those attestations.

The Hoffmans fault Hometap for not listing the arbitration agreement in the "Investment Signing Instructions," which "lists the nine documents that made up the Hoffman's complete 'Investment Package.'" Opp. 11. But the Option Purchase Agreement is the second item on the list, and that Agreement contains the arbitration agreement and delegation provisions. Pls.' Ex. B, Dkt. No. 22-2, at 3.

The Hoffmans also state that the "Investment Disclosures" document "create[s] the overall impression that they disclose all important terms of the transaction," Opp. 11, but that document repeatedly refers to the full Agreement and instructs the Hoffmans to refer to it as well. Pls.' Ex. A at 3-4, 7.



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

The Hoffmans do not identify any Washington case law requiring separate initials for delegation provisions. Indeed, Washington law cannot require Hometap to "highlight the arbitration clause" or "specifically call that clause to a counter-party's attention" without being preempted by the FAA. *Lim*, 8 F.4th at 1001.

Finally, the Hoffmans had a three-day opt-out right, giving them time to further review the Agreement after signing. *See* Defs.' Mot. at 14 (citing Decl. Ex. D, Dkt. No. 14-4). They offer no explanation for why that opt-out opportunity would not defeat their unconscionability argument.

In sum, the Hoffmans had every ability and opportunity to review and understand the delegation provisions. Those provisions are not unconscionable and should be enforced.

## II. If it does not enforce the delegation provisions, this Court should enforce the arbitration agreement.

Even if the Court were to reach the question of arbitrability, the Hoffmans provide no valid ground to avoid arbitrating their claims. The Hoffmans contend that the arbitration agreement is unenforceable, asserting that it is barred by TILA's prohibition on arbitration agreements and that it is unconscionable. Neither argument passes muster.

### A. TILA's bar on arbitration does not apply.

The arbitrability dispute turns on whether the Agreement extended "credit" and is therefore a "residential mortgage loan." 15 U.S.C. §§ 1602(dd)(5), 1639c(e)(1). TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *Id.* § 1602(f). The ordinary meaning of "debt" is "something owed." Opp. 21 (quoting Debt, WEBSTER'S NEW COLLEGIATE DICTIONARY (9th ed. 1983); Debt, AMERICAN HERITAGE DICTIONARY (1st ed. 1969); Debt, OXFORD ENGLISH DICTIONARY (1980)). And money loaned is "owed" if there is an obligation to repay it. Owe, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976).

Consistent with those definitions, a "credit transaction" involves "the right of deferred payment … promised in exchange for some form of consideration." *Persinger v. Sw. Credit Sys.,*



McGuireWoods LLP
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

*L.P.*, 20 F.4th 1184, 1195 n.5 (7th Cir. 2021); *see Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002). A loan permits a debtor to defer payment, but that payment is eventually due to be repaid (often with interest). *See* Loan, BLACK'S LAW DICTIONARY (4th ed. 1968) ("[A]dvance of money with an absolute promise to repay"; "contract whereby one delivers money to another who agrees to return equivalent sum"; "payment of money by one to another to be repaid some future day."). A loan therefore requires a repayment obligation: the borrower receives money and agrees to pay it back. The Option Purchase Agreement does not fit that description.

The Hoffmans take no issue with any of the above legal analysis. Instead, they simply argue that a repayment obligation *does* exist under the Agreement. *See* Opp. 22. But they misconstrue the Agreement in multiple respects.

To start, the Hoffmans contend that they "assumed an obligation" to pay Hometap "at least 41.435% of the value of their home." *Id.* They did not. They are required to pay Hometap that percentage share only *if* Hometap chooses to pay the additional Exercise Payment and exercise its option. *See* Defs.' Mot. at 10. The Hoffmans owe *nothing* if the option expires without being exercised.

This feature reflects that the Agreement is an option contract, not a loan. Option contracts involve that contingency—the possibility that the option will not be exercised. Thus, they do not constitute an agreement "to defer payment of debt," 15 U.S.C. § 1602(f), and the Consumer Financial Protection Bureau's commentary correctly recognizes that option contracts are not forms of "credit." *See* 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(vii).[2]

Even if the Hoffmans were required to pay Hometap for its share of the home's value regardless of whether Hometap exercised its option, such an obligation still would not make the Agreement a loan, because that obligation is not a return of the initial investment. The Hoffmans

[2] The Hoffmans contend that the Option Purchase Agreement is not an option contract because it "does not convey any future right to buy the Hoffmans' property at a specified price." Opp. 30. It does exactly that, as to a 41.435% or 49.722% share of the property, at the price of 1% of the investment amount. Decl. Ex. A at 9-10, § 3.1(e). Even though the Agreement does not involve an option to purchase the *entire* property, it is an option contract nonetheless.



McGuireWoods LLP
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

are not required, under any circumstances, to repay the $179,000 investment amount that they received. Nor is any amount Hometap might receive linked to that amount. Hometap instead may receive the value of its 41.435% or 49.722% ownership interest after making the additional Exercise Payment. There is never any repayment obligation.

The deed of trust further confirms this—it does not, as the Hoffmans assert, reflect that the Agreement constitutes a loan. As the Hoffmans acknowledge, the deed of trust "secures the Hoffmans' 'payment obligations in the Hometap Homeowner Agreement,' including 'payment of the *Hometap Share* owed to Hometap.'" Opp. 22 (quoting Decl. Ex. C, Dkt. No. 14-3, at 3) (emphasis added). But it does not secure any obligation to repay the $179,000 investment amount. No such repayment obligation exists. The substance of the Agreement thus matches its terms, which repeatedly and clearly state that the Agreement is "not a loan." Decl. Ex. A at 2; *id.* at 13, § 4.1(i); *id.* at 22, § 8.4.

At bottom, the Hoffmans confuse payment for repayment. Hometap may eventually receive money from the Hoffmans (the value of its ownership interest, assuming it is not worthless). But an agreement does not extend "credit" merely because one party may receive proceeds after paying a counterparty. Otherwise, any investment would be a loan. But that result would be contrary to the CFPB's commentary and common sense. *See* 12 C.F.R. Pt. 1026, Supp. I, Subpt. A, cmt. 2(a)(14)(1)(viii) (stating that "[i]nvestment plans in which the party extending capital to the consumer risks the loss of the capital advanced" are not "credit").

A loan exists only when a debtor must *return* an amount received. The Agreement imposes no obligation to return the $179,000 investment amount, or any "larger" amount. Opp. 23. Hometap's proceeds depend on the property's future value and may be greater than, equal to, or less than the investment amount. *See* Defs.' Mot. at 11, 13.

The Hoffmans argue otherwise with empty double-speak, at once claiming that Hometap is "guaranteed to get its advance back" while acknowledging that it will not if the home's value decreases by more than 28% and simply describing that scenario as "unlike[ly]." Opp. 28. They incorrectly argue that a severe market-wide crash is necessary to see such depreciation. *Id.* at 13-



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

14. But a stable market can coexist with substantial property-specific depreciation caused by localized or idiosyncratic factors. The risk that a given property's value may decline—even without a market-wide crash—is precisely why Hometap's business model involves bundling transactions, so that gains on some transactions may offset losses on others.

Contrary to the Hoffmans' suggestion, Hometap does not argue that the Agreement is beyond TILA's reach simply because the amount Hometap may receive varies with the home's value. *See Foster v. Equitykey Real Est. Invs. L.P.*, No. 17-cv-67, 2017 WL 1862527, at *4 (N.D. Cal. May 9, 2017) ("Loans do not require a sum certain to be stated in the contract."). The point is that "the amount due … must be based on the amount of benefit received," *McKay v. Ingleson*, 558 F.3d 888, 891 (9th Cir. 2009), and when a credit transaction involves the exchange of funds, a loan involves an obligation to repay the funds advanced. Hometap's proceeds are tied to the property's future value and are in no way a repayment of the initial investment amount. The Agreement therefore requires no repayment of principal or interest and is not a loan.[3]

By invoking TILA's treatment of nonrecourse "reverse mortgage transaction[s]," the Hoffmans only underscore the distinction between loans and the Agreement. Opp. 23-24; 15 U.S.C. § 1602(cc). Because a nonrecourse mortgage can be enforced only to the extent of the security interest in the property, the lender's remedies are limited if the debtor is unable or unwilling to pay. *See Milkovich v. United States*, 28 F.4th 1, 4 (9th Cir. 2022). The repayment obligation thus may not be satisfied as a practical matter. A nonrecourse reverse mortgage loan, however, still imposes such an obligation. Indeed, TILA reverse mortgages involve an obligation to *re*pay "principal, interest, and shared appreciation." 15 U.S.C. § 1602(cc)(2). The Agreement here does not impose any obligation to repay principal, remedies questions aside.[4]

---

[3] The Hoffmans claim that the 20% "Hometap Cap" proves that the Agreement obligates interest payments. Opp. 27. But the Hometap Cap simply limits Hometap's share of the proceeds in the rare case that the property appreciates at an extraordinary rate (or if the Hoffmans chose to repurchase the option after little time passes). *See* Pls.' Ex. A at 5-6. It does not somehow create an obligation to pay interest on a non-existent principal amount.

[4] The Hoffmans claim that the Option Purchase Agreement is a reverse mortgage only under



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

The Ninth Circuit's unpublished memorandum disposition in *Olson v. Unison Agreement Corp.*, No. 23-2835, 2025 WL 2254522 (9th Cir. Aug. 7, 2025), does not help the Hoffmans.[5] *Olson* addressed only Washington law and expressly declined to interpret that law "consistently with the TILA." *Id.* at *5. The contract there also required repayment of "the *greater* of (1) the sum of Unison's initial $64,750 payment and any additional owner obligations that had accrued; or (2) the amount that Unison would obtain if the house were to be sold at that time." *Id.* at *2. The Agreement here has no minimum repayment obligation under any circumstances, so *Olson* does not control.[6]

The Hoffmans fare no better with the other non-binding cases they cite. *See* Opp. 25. Two applied state law—not TILA—and simply assessed the viability of plaintiffs' allegations at the pleading stage. *See In re Stone*, 671 B.R. 752, 755-57 (Bankr. D. Colo. 2025); *Commonwealth v. Hometap Equity Partners, LLC*, No. 2584CV00469, 2025 WL 2468564, at *5-6 (Mass. Super. Ct. Aug. 21, 2025). In neither case did the court reach a final decision on whether the transaction was a loan, even under state law. *See Stone*, 671 B.R. at 757; *Hometap*, 2025 WL 2468564, at *7 ("[I]t is premature to conclude one way or the other" whether Hometap's "HEIs are loans.").

The only TILA case the Hoffmans cite is an unreasoned Arizona trial court decision that is currently on appeal. *See* Opp. 25 (citing *Muskal v. Point*, CV 2025-024855, Dkt. 5 (Ariz. Sup. Ct. Dec. 17, 2025)). That ruling should not persuade this Court. It did not offer any support from

---

Washington law, not TILA. *See* Compl., Dkt. No. 1-2, ¶¶ 39, 91-92; Opp. 24 & n.7. While Washington law encompasses agreements that make "[a]ny principal, interest, *or* shared appreciation" due, RCW 31.04.05(5)(a) (emphasis added), TILA reverse mortgages require the repayment of at least a principal amount. *See* 15 U.S.C. § 1602(cc)(2).

[5] After it issued its non-precedential opinion, the Ninth Circuit vacated its judgment, leaving the district court's judgment dismissing the plaintiffs' state-law claims in place.

[6] The Hoffmans also compare the Option Purchase Agreement to the pawn-shop arrangement in *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993). *See* Opp. 23. The transactions have nothing in common. *Burnett* relied on the "strong incentive" debtors would have to "repurchase" pawned items, because they could reacquire pawned items for much less than their market value. 3 F.3d at 1262. The Option Purchase Agreement offers no financial incentive to the Hoffmans to repurchase the option; assuming an equivalent property value, they are in the same position whether they repurchase it or Hometap exercises it.



McGuireWoods LLP
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

TILA's text. Indeed, the only case to have analyzed TILA's text found that it does not cover option contracts, like Hometap's, where the owner "did not agree to 'repay absolutely' the option premium payment." *See Foster*, 2017 WL 1862527, at *4. Although the precise risk of loss may vary across this class of option contracts, they all lack the essential requisite of a loan in that they do not require a return of the investment amount.

Even while relying almost exclusively on state-law cases, the Hoffmans ignore the several state-law amendments that broadened existing lending statutes to cover agreements like Hometap's. *See* Defs.' Mot. at 13. Those changed laws reflect that existing treatment of mortgage loans, including under TILA, does not govern Hometap's products. If Congress wishes to cover such agreements, it must amend TILA. This Court cannot make that change.

The Agreement thus falls outside TILA's scope and arbitration is warranted, should the Court reach the issue.

**B. The arbitration agreement is not unconscionable.**

The Hoffmans also fail to show that any unconscionability issue prevents arbitration. In attacking the delegation provisions on unconscionability grounds, the Hoffmans mention in passing that they believe the "broader arbitration provision" is also unconscionable. Opp. 32. Their opposition contains no developed argument on that point, so it is forfeited. Even if construed to challenge the arbitration agreement generally, the unconscionability argument fails for the same reasons discussed above. *See supra* Part I.B. In any event, because the Agreement contains enforceable delegation provisions, any question of the arbitration agreement's purported unconscionability is a threshold one for the arbitrator. The Hoffmans do not even attempt to argue otherwise.

## CONCLUSION

For these reasons, the Court should grant Hometap's motion, compel the Hoffmans to arbitrate their claims on an individual basis, and stay this action pending the outcome of arbitration.

Dated: June 22, 2026

I certify that this memorandum contains 4,165 words, in compliance with the Local Civil Rules.



**McGuireWoods LLP**
Safeco Plaza
1001 Fourth Avenue
Seattle, WA 98154
Telephone: 206.336.5000

Respectfully submitted,

*/s/ Monique Wirrick*

Monique Wirrick, WSBA No. 34093
MCGUIREWOODS LLP
Safeco Plaza
1001 Fourth Avenue, Suite 4368
Seattle, WA 98154-1123
Phone: (206) 336-5185
Email: mwirrick@mcguirewoods.com

Jeffrey Paul Ehrlich (admitted *Pro Hac Vice*)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Telephone: 202-857-1700
jehrlich@mcguirewoods.com

Kathryn M. Barber (admitted *Pro Hac Vice*)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
(804) 755-1227
kbarber@mcguirewoods.com

*Attorneys for Defendants Hometap Investment Partners III SPV, LLC and Hometap Equity Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I caused a true and correct copy of the foregoing Reply in Support of Motion to Compel Arbitration and Stay Action to be served on the following parties in the manner indicated:

| | |
|---|---|
| Beth E. Terrell, WSBA #26759<br>Blythe H. Chandler, WSBA #43387<br>Elizabeth A. Adams, WSBA #49175<br>Eleanor Eagan, WSBA #64463<br>Terrell Marshall Law Group PLLC<br>936 North 34th Street, Suite 300<br>Seattle, WA 98101<br><br>bterrell@terrellmarshall.com<br>bchandler@terrellmarshall.com<br>eadams@terrellmarshall.com<br>eeagan@terrellmarshall.com<br><br>*Attorneys for Plaintiffs* | ____ Via hand delivery<br>____ Via U.S. Mail, 1st Class, Postage Prepaid<br>____ Via Overnight Delivery<br>____ Via Facsimile<br>__X__ Via Email<br>____ Other: ____________________ |

Dated: June 22, 2026

Respectfully submitted,

*/s/ Monique Wirrick*
Monique Wirrick, WSBA No. 34093
MCGUIREWOODS LLP
Safeco Plaza
1001 Fourth Avenue, Suite 4368
Seattle, WA 98154-1123
Phone: (206) 336-5185
Email: mwirrick@mcguirewoods.com

Jeffrey Paul Ehrlich (admitted *Pro Hac Vice*)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Telephone: 202-857-1700
jehrlich@mcguirewoods.com

Kathryn M. Barber (admitted *Pro Hac Vice*)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219

(804) 755-1227
kbarber@mcguirewoods.com

*Attorneys for Defendants Hometap Investment Partners III SPV, LLC and Hometap Equity Partners, LLC*